FAIR HOUSING COUNCIL OF SAN DIEGO; Joann Reed; and Milton Rodgers, Jamel Rodgers and Antwan Ramsey, Minors, by their Guardian Ad Litem, Joann Reed, Plaintiffs,

v.

PEÑASQUITOS CASABLANCA OWNER'S ASSOCIATION, Defendant.

No. 05CV0072–LAB (CAB).

United States District Court, S.D. California.

Nov. 26, 2007.

---

James M. Treglio, Clark and Markham, San Diego, CA, Christopher A. Brancart, Elizabeth N. Brancart, Brancart and Brancart, Pescadero, CA, for Plaintiffs.

Gregory P. Konoske, Gregory C. Kane, Shifflet Kane and Konoske, San Diego, CA, for Defendant.

## ORDER:

(1) **OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION RE FEES AND COSTS AWARD TO PLAINTIFF REED;**

(2) **ADOPTING RECOMMENDATION RE FEES AND COSTS AWARD TO PLAINTIFF REED;**

(3) **OVERRULING IN PART AND SUSTAINING IN PART OBJECTIONS TO RECOMMENDATION RE DENIAL OF FEES AND COSTS AWARD TO PLAINTIFF FAIR HOUSING COUNCIL; AND**

(4) **AWARDING PORTION OF CLAIMED COSTS TO PLAINTIFF FAIR HOUSING COUNSEL**

LARRY ALAN BURNS, District Judge.

Following jury verdicts for plaintiffs in this fair housing civil rights action, the undersigned district judge referred the Applications for attorneys' fees and costs of plaintiff Joann Reed ("Reed") and of plaintiff Fair Housing Council of San Die-

go ("FHCSD") to Magistrate Judge Cathy Ann Bencivengo for a Report and Recommendation ("R & R"). Dkt Nos. 114, 115. Judge Bencivengo received briefing from the parties on both Applications and filed R & Rs on August 31, 2007 and September 4, 2007. Reed had requested an award of $347,198.75 in attorneys' fees—a figure including a 25% contingent fee risk multiplier applied to a lodestar figure of $277,759.00 in claimed fees—and $16,001.51 in litigation costs and expenses. Judge Bencivengo recommends Reed's Application be granted, but without any contingent fee multiplier and with additional downward adjustments, in an award amount of $161,000 in attorneys' fees and $7,673.83 in costs and expenses, for a total award of $168,673.83. Dkt No. 122. She recommends the FHCSD's Application requesting an award of $64,809.69 in combined fees and costs be denied in its entirety. Dkt No. 123.

Defendant Penasquitos Casablanca Owner's Association ("PCOA") filed Objections to the recommended fee award to Reed. Dkt No. 124. Reed filed a Reply to the PCOA Objections (Dkt No. 131) and also filed her own objections to the R & R. Dkt No. 125. The PCOA filed a Reply to Reed's Objections. Dkt No. 127. The FHCSD filed Objections to the R & R regarding its fee Application. Dkt No. 126. The PCOA filed a Reply to the FHCSD's Objections. Dkt Nos. 128, 130 (duplicate filing). For the reasons discussed below, all objections to the Reed Application R & R are *OVERRULED,* and that R & R is *ADOPTED.* The Objections to the FHCSD's Application R & R are *OVERRULED IN PART* and *SUSTAINED IN PART,* and that R & R is *ADOPTED IN PART* and *REJECTED IN PART.*

## I. BACKGROUND

In July 2004, while she was a resident of the Casablanca condominiums, Reed complained of housing discrimination to the FHCSD, a non-profit organization with the mission to promote fair housing in San Diego County. She reported Kent MacDonald, a security guard PCOA employed, had sexually harassed her between February 2004 and July 2004, and her complaints to the PCOA had not resulted in corrective action.[1] Compl. ¶¶ 17, 13. The FHCSD investigated and concluded the sexual harassment allegations had merit. It also purportedly discovered the PCOA had rules and regulations that discriminated against families with children because of their familial status.[2] Compl. ¶ 18.

Reed, three of her minor children or grandchildren who lived with her in 2004, and the FHCSD initiated this litigation in January 2005, naming only the PCOA as a defendant. They alleged nine causes of action: First, discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.;* Second, unlawful business practices in violation of the California Fair Employment and Housing Act, CAL. GOV.CODE §§ 12927, 12955, *et seq.;* Third, unlawful business practices in violation of the Unruh Civil Rights Act, CAL. CIV.CODE 0 § 51, *et seq.;* Fourth, violation of the Bane Civil Rights

---

1. Reed had obtained a restraining order in June 2004, prohibiting MacDonald from contacting her, and MacDonald was arrested then returned to prison in part for his sexual battery of Reed after a September 2004 parole revocation hearing. Compl. ¶¶ 14–16.

2. Reed also alleged the PCOA retaliated against the Reed plaintiffs because of Reed's complaints about MacDonald's conduct, such as the imposition of different rules or conditions on the use and enjoyment of facilities by minor children like those living with Reed. None of those contentions was tried to a verdict.

Act, CAL. CIV.CODE § 52. 1, *et seq.;* Fifth, unfair business practices under CAL. BUS. & PROF.CODE §§ 17200, *et seq. in the form of* a pattern or practice of unlawful housing practices in connection with the operation of the PCOA; Sixth, assault and battery through its agent MacDonald, in violation of CAL.PENAL CODE § § 227, 242, 245; Seventh, wrongful entry through its agent MacDonald, in violation of CAL. CIV.CODE § 1954; Eighth, breach of the covenant of quiet enjoyment, in violation of CAL. CIV. CODE § 1927; and Ninth, negligence causing injury through its agent MacDonald in breach of its duty to operate the Casablanca condominiums in a safe and lawful manner in that it negligently hired, trained, supervised, and retained MacDonald as its security guard employee. The FHCSD joined in three of the nine causes of action alleged in the Complaint: the First, Second, and Ninth claims.

Plaintiffs sought monetary (compensatory and statutory) damages, declaratory relief, injunctive relief, and punitive damages Compl. pp. 9–10. More than half the claims initially pled were abandoned or eliminated voluntarily or by court order before trial or jury deliberations, notably all the familial status discrimination claims. The case was tried solely on plaintiffs' civil rights and housing discrimination theories for the PCOA's conduct or omissions contributing to the sexual harassment of Reed. The three minors and their claims were dismissed from the case after receipt of trial evidence.

The jury deliberated only on the federal fair housing and the state civil rights and fair housing claims. The January 11, 2007 verdict found the PCOA liable under the fair housing claims, both state and federal, the Unruh Act (CAL. CIV.CODE § 51.9. Sexual Harassment), and the Bane Act (CAL. CIV.CODE § 52.1, interference by threats, intimidation, or coercion with the exercise or enjoyment of individual rights secured by federal or state Constitutions or laws). The pleading was conformed to the findings after trial on plaintiffs' motion to substitute the Ralph Act (Cal. Civ.Code § 51.7(a)) for the Bane Act mistakenly relied on in the Complaint, to preserve the statutory award component of the verdict. *See* Post–Trial Motions Order, Dkt No. 110. Although a "pattern and practice" was alleged and noted in the Pre–Trial Order as an issue to be tried, this court found no basis upon which to enter an injunction. As the court noted in the Order denying any equitable relief:

> [T]he court has expressed reservations throughout this litigation that the unique circumstances of the conduct giving rise to this lawsuit make it a close call whether the case even falls within fair housing policies and statutes, including the federal fair housing law upon which federal jurisdiction was predicated. The circumstances certainly fall outside the arena of the usual fair housing cases. The facts of this case reveal no endemic or even isolated discriminatory practice rectifiable by a mandatory injunction of the kind plaintiffs seek. The PCOA does not engage in offering housing, conditioning tenancies on any criteria, or perpetuating particular tenancies. The court is unable to articulate any purpose related to the substance of this case to be served by granting any of the aspects of the injunctions requested. Finally, "[i]n each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). The PCOA board is a voluntary group whose service should not be unnecessarily burdened with requirements remote from their responsibilities predicated on an isolated instance of sexual

harassment by a now-former employee unrelated to any condition of housing targeted by traditional fair housing concerns.

Dkt No. 110, 3:5–18.

As prevailing plaintiffs, both Reed and the FHCSD now move to recover their claimed attorneys' fees and costs to prosecute this civil rights action.

## II. DISCUSSION

### A. *Legal Standards*

#### 1. *Reports And Recommendations*

A district judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Rule 72(b); *see* 28 U.S.C. §. 636(b)(1). A party objecting to the recommended disposition of the matter may "serve and file specific objections to the proposed findings and recommendations," and "a party may respond to another party's objections." Rule 72(b). · "[T]he court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (when objections are made, the court must make a *de novo* determination of the factual findings to which there are objections). The court also reviews *de novo* the magistrate judge's conclusions of law. *Gates v. Gomez*, 60 F.3d 525, 530 (9th Cir.1995). The statutory provision does not require that the district court conduct some lesser review when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 149–50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *but see Robbins v. Carey*, 481 F.3d 1143, 1146–47 (9th Cir. 2007) (the magistrate's conclusions of law are reviewed *de novo*, regardless of wheth-er any party has filed objections thereto). "If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." *Orand v. United States*, 602 F.2d 207, 208 (9th Cir. 1979).

#### 2. *Attorneys' Fees And Costs Awards To Prevailing Parties*

Under the Fair Housing Act ("FHA"), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees and costs." 42 U.S.C. § 3613(c)(2). The Fair Employment and Housing Act ("FEHA") similarly provides: "the court may, in its discretion, award the prevailing party, other than the state, reasonable attorney's· fees and costs."· CAL. GOV.CODE § 12989.2. The only material difference between the state and federal fee-shifting statutes pertinent here concerns the availability· under the state statutes of a multiplier to enhance an attorneys' fees award for exceptional representation or other public purpose incentive or to compensate for contingent fee risk. Under the state fee-shifting statute, "a trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable. Nor should a fee enhancement be imposed for the purpose of punishing the losing party." *Ketchum v. Moses*, 24 Cal.4th 1122, 1139, 1136, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001) ("every fee shifting statute must be construed on its own merits"). The same factors already encompassed in the lodestar should not be considered when determining· an appropriate enhancement. *Id.*

at 1138, 104 Cal.Rptr.2d 377, 17 P.3d 735. Reed's counsel seek a multiplier to enhance their claimed lodestar award by 25%.

■ "[A] trial court ... has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Ketchum,* 24 Cal.4th at 1138, 104 Cal. Rptr.2d 377, 17 P.3d 735. "[T]he definition of what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Anderson v. Director, Office Workers Compensation Programs,* 91 F.3d 1322, 1325 (9th Cir.1996). When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk. *See Mangold v. PUC,* 67 F.3d 1470, 1479 (9th Cir.1995). Although the district court has discretion in determining attorneys' fees awards, it must provide "some indication or explanation as to how it arrived at the amount of fees awarded." *Fair Housing of Marin v. Combs,* 285 F.3d 899, 907 (9th Cir.2002).

■ The lodestar approach to calculating attorneys' fee, pursuant to guidelines articulated in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), is presumed to result in a reasonable fee award. *See Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466.

The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.... After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation.[3]

*Morales v. City of San Rafael,* 96 F.3d 359, 363–64 (9th Cir.1996) (citation and footnote omitted) (identifying twelve factors bearing on the reasonableness of an attorneys' fee award articulated in *Kerr v. Screen Guild Extras, Inc.,* 526 F.2d 67, 70 (9th Cir.1975)); *but see Yahoo Inc. v. Net Games, Inc.,* 329 F.Supp.2d 1179, 1182 (N.D.Cal.2004) (discussing the *Kerr* factors subsequently deemed "subsumed in the initial lodestar calculation," numbering at least five of the twelve), *citing Morales,* 96 F.3d at 363–64.

■ In civil rights cases, "Congress intended that statutory fee awards be 'adequate to attract competent counsel, but ... not produce windfalls to attorneys.'" *City of Riverside v. Rivera,* 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (citation omitted). The amount of an attorneys' fees award need not be proportionate to the amount of damages the plaintiffs actually recovered. *See Id.* at 580–85, 106 S.Ct. 2686. Congress elected not to impose a rule restricting attorneys' fees to a sum "proportionate to the amount of damages a civil rights plaintiff might recover" to avoid windfalls. *Id.* at 580, 106 S.Ct. 2686; *see also Combs,* 285 F.3d at 908. However, the amount of damages recovered is a one of several relevant factors the court should consider in calculating the award.

"[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," supported by evidence submitted by the party seeking the fee award, is the "starting point" for the analysis. *Hensley,* 461 U.S. at 433, 103

---

3. "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: '(1) the novelty and complexity of the issues, (2) the special skill and expertise of counsel, (3) the quality of representation, ... (4) the results obtained, ... and (5) the contingent nature of the fee agreement.'" *Morales,* 96 F.3d at 364, n. 9 (citations omitted).

S.Ct. 1933. From that "objective basis" establishing "an initial estimate of the value of a lawyer's services," the court may reduce the award in consideration of inadequate documentation of hours and should "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 433–34, 103 S.Ct. 1933. The court properly considers such factors as whether the case was overstaffed and the skill and experience of the lawyers. *Id.* at 434, 103 S.Ct. 1933. The prevailing party's counsel has a duty to exclude from a fee request "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933.

The *Hensley* Court addressed the issue "whether a partially prevailing plaintiff may recover an attorney's fees for legal services on unsuccessful claims" and sought "to clarify the proper relationship of the results obtained to an award of attorney's fees." *Hensley,* 461 U.S. at 426, 432, 103 S.Ct. 1933. "The product of reasonable hours times a reasonable rate does not end the inquiry." *Id.,* at 434, 103 S.Ct. 1933. Other considerations that may lead the court to adjust the fee up or down "includ[e] the important factor of the 'results obtained.'" *Id.* "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief," in which case the court must address two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

■ "The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorneys' fees." *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933. "A reduced fee award is appropriate if the relief, however significant, is limited in

**comparison to the scope of the litigation as a whole."** *Id.* at 439–40, 103 S.Ct. 1933 (emphasis added) (declining to affirm a fee award, despite acknowledging the awarding court's "commendable effort in explaining the fee award," because a finding the significant extent of the relief plaintiffs obtained "clearly justifies the award of a reasonable attorney's fee" does not "answer the question of what is 'reasonable' in light of that level of success"). "[T]he inquiry does not end with a finding that the plaintiff obtained significant relief." *Id.*

In *Farrar v. Hobby,* 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court identified an exception, applicable in "nominal damages" or "de minimis relief" cases, to the general requirements that govern attorneys' fees award calculations, including the requirement that a lodestar first be calculated. *Farrar,* 506 U.S. at 116–18, 113 S.Ct. 566; *see Morales,* 96 F.3d at 362–63 ("The *Farrar* exception, which would allow the court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all, is limited to cases in which the civil rights plaintiff 'prevailed' but received only nominal damages and achieved only 'technical' success"). " 'Nominal damages' is not limited to an award in the amount of $1, but includes an award that may properly be classified as 'de minimis.'" *Morales,* 96 F.3d at 363.

> Whether the plaintiff's "success is purely technical or *de minimis*" ... is determined by examining other factors in addition to the amount of money damages awarded. Primary among such other considerations is "the significance of the legal issues on which the plaintiff claims to have prevailed" and the "public purpose" the plaintiff's litigation served.

*Morales,* 96 F.3d at 363, *quoting Farrar,* 506 U.S. at 117, 121, 113 S.Ct. 566 (O'Con-

nor, J., concurring) ("The difference between the amount recovered and the damages sought is not the only consideration").

■ A prevailing party may also recover as part of a fee award out-of-pocket expenses counsel normally charge fee-paying clients. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir.2005). However, like an attorneys' fees award, the expenses requested must be substantiated and reasonable in amount. *Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir.1994).

### B. *Reed Application*

#### 1. *R & R Fees And Costs Award Recommendation*

Reed requests a costs award of $16,001.51 and actual attorneys' fees in the voluntarily-adjusted amount of $254,799.00 (exclusive of the 25% state law multiplier Reed also requests), broken down as charted in the R & R, for the services of two attorneys (Christopher Brancart, Esq. and Elizabeth Brancart, Esq., billing at the rate of $350.00 per hour), two paralegals, and two litigation support persons, supported by time records and the Declarations of both attorneys. R & R 4:19–5:12. The PCOA does not challenge the reasonableness of any of the hourly rate, and this court adopts the R & R recommendation to find the hourly rates are reasonable.

Only four of Reed's nine causes of action were litigated to jury verdicts, resulting in a $47,000.00 money damages recovery. Of that award, $10,000.00 was compensatory, the balance statutory. In opposing Reed's Application, the PCOA characterizes Reed's recovery as "extremely limited," warranting an award of no fees or low fees under the *Farrar* exception to the lodestar approach. Judge Bencivengo found Reed, as a prevailing party in civil rights litigation, is entitled to recover reasonable attorneys' fees, concluded her recovery was not so limited under the *Farrar* exception

as to warrant abandonment of the lodestar approach, and properly considered the "degree of the plaintiff's overall success" as informing the question of "the reasonableness of a fee award." R & R 3:7–25. Judge Bencivengo ascertained the lodestar figure by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate, in consideration of certain factors appropriate at either the "reasonable hours" determination or the "reasonable rate" determination: "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the results obtained; and (5) the contingent nature of the fee agreement." R & R 4:4–8, *quoting Morales*, 96 F.3d at 364 *and citing Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

Judge Bencivengo took the second step to apply equitable discretion to adjust the lodestar amount "on the basis of other considerations." R & R 4:8–9, *citing Lytle v. Carl*, 382 F.3d 978, 988 (9th Cir.2004). The R & R substantiates the Brancart & Brancart firm itself deducted from its fees request 52.4 hours ($3,826.00) of the paralegal and litigation support time from the total hours expended on the litigation. With that deduction, as charted in the R & R, for the 29–months duration of this litigation, up to and including the filing of Reed's reply brief in support of the fee Application "on behalf of all four plaintiffs for all nine causes of action," counsel identified a total of 1,026.9 hours expended by the attorneys and their support staff. From that total, counsel also eliminated from the Reed fee Application 36.8 hours of time attributed to "(1) the representation of the three minor children who were not prevailing parties, (2) the dismissal of the retaliation claim, (3) the time spent solely on the issue of punitive damages, and (4) time spent on jury instructions and verdict forms." R & R 6:15–17, *citing* E.

Brancart Decl. at ¶¶ 22–27. "Ms. Brancart then made a 5% across-the-board reduction of the hours spent by counsel and staff in order to take into account any time that was spent in 'an unnecessary, inefficient, or duplicative manner.'" R & R 6:17–19, *citing* E. Brancart Decl. at ¶ 28.

In opposition to the Reed fee request, the PCOA objected, among other things, plaintiffs' retention of counsel from Pescadero, California was unnecessary because qualified attorneys in San Diego could have handled this case, arguing the time and expenses incurred for travel should be deducted from the Application amount. In response, Reed's counsel deducted an additional 74.6 hours attributed to Christopher Brancart's travel time from Northern California to prosecute this case in San Diego, leaving a total of 866,5 hours in claimed time, for a total adjusted actual fees request of $254,799.00. R & R 6:21–27.

The R & R recommends the court sustain the PCOA's objections to compensation for additional blocks of attorney time claimed in the Reed Application. The PCOA argues their time spent for preparation and argument of post-trial motions should not be taxed to the defendant because Reed did not prevail on the injunctive relief motions, and the motion to substitute the Ralph Act for the Bane Act was necessitated solely by plaintiffs' own pleading error. Judge Bencivengo recommends a deduction of 41.4 hours at $350.00 per hour for those activities, reducing the fee claim by an additional $14,490.00, to $240,309.00. R & R 7:12–19. Finally, in a well-reasoned discussion, in consideration of "the circumstances of this litigation and the results obtained," the magistrate judge recommends the court concur with the PCOA's challenge to the overall reasonableness of the hours claimed by plaintiffs' law firm, even after the foregoing deductions, on grounds those hours cannot be reasonably attributed to the representation of Ms. Reed on the four causes of action on which she prevailed, observing those claimed hours are nearly double the total time spent by defense counsel, and are "excessive and unreasonable." R & R pp. 7–9. She recommends "the [adjusted] fee award be reduced [additionally] by approximately one-third, to account for the time spent by counsel in pursuit of abandoned claims and on behalf of non-prevailing parties, and in light of the award plaintiff received on the remaining claims in the litigation, for a total fee award of $161,000.00." R & R 9:14–17.

The Reed Application also seeks costs and expenses in the amount of $16,001.51, supported by counsel's detailed report. The R & R recommends the court deduct $7,615.68 in costs associated with counsel's travel to San Diego from Pescadero, comprised of air fair, lodging, car rental, airport parking, meals and the like, for the same reasons as Reed's counsel withdrew his travel time from the fees Application when challenged as not fairly taxed to the defendant. R & R 9:22–27. Finally, the R & R recommends reducing the $2,155.38 in copying and scanning expenses by one-third to account for work done on behalf of the minors and on abandoned claims, as the Reed Application does not reflect such deductions were made before those charges were totaled and submitted for recovery from the PCOA. The R & R thus recommends a total costs award in the amount of $7,673.83, for a recommended combined fees and costs award to Reed of $168,673.83.

### 2. *Defendant PCOA's Objections To R & R*

Defendant PCOA states: "If the 'lodestar' method of calculating fees is to be utilized, this party has no objection to the Report," commending the R & R's "thorough analysis" applying that methodology. PCOA Obj. 2:2. However, the PCOA con-

tends the lodestar method should not be used on the facts and in the circumstances of this case. Despite the R & R discussion of the *Farrar* exception, the PCOA interprets the R & R as having proceeded as if the lodestar method is the sole and mandatory standard for assessing the reasonableness of fees claimed by prevailing parties and urges the court instead to exercise its discretion to disregard the lodestar method in order "to reach an award more commensurate with the recovery, the reasonable position taken by the defendant and the lack of success by the plaintiff on so many causes of action abandoned or dismissed." PCOA Obj. 3:23–26. The PCOA observes attorneys' fees awards are discretionary and limited, not mandatory, when a plaintiff only partially prevails on her causes of action: the court "in its discretion," "may allow" a reasonable attorneys' fees and costs award to the prevailing private party in a civil action asserting discriminatory housing practices. 42 U.S.C. § 3613(a), (c)(2).

Although a plaintiff may be considered a prevailing party under the "generous formulation" of civil rights fee statutes, such a designation "brings the plaintiff only across the statutory threshold." *Hensley,* 461 U.S. at 432, 103 S.Ct. 1933 ("It remains for the district court to determine what fee is 'reasonable' "). Plaintiffs in *Farrar* sought an award of their attorneys'

fees under 42 U.S.C. § 1988. The *Farrar* Court held that a civil rights plaintiff who wins even nominal damages is a prevailing party for purposes of an attorneys' fees award. *Farrar,* 113 S.Ct. at 573–74 (nominal damages, no less than compensatory damages, effect a "material alteration of the legal relationship between the parties" as the plaintiff becomes "entitled to enforce a judgment, consent decree, or settlement against the defendant" to force the defendant to pay an amount of money not otherwise owed). There is no dispute Reed is a "prevailing party." However, the PCOA argues Reed's recovery was quite limited in comparison to her multiple claims and settlement demands, notwithstanding the absence of any damages figure alleged in the pleadings.[4]

In her Reply to the PCOA's R & R Objections, Reed first asks the court to overrule the Objections on grounds the magistrate judge correctly selected the lodestar methodology for purposes of calculating a reasonable fee award, contending the results she obtained were neither minimal nor *de minimis* so as to justify an award of low or no fees. Reed Reply 1:27–2:4. Second, she asks the court to find the R & R refusal to consider settlement demands in setting a reasonable fee award should extend to statements made in settlement negotiations, as Fed.R.Evid. ("Rule") 408 applies to both.[5] She also

---

**4.** The R & R expressly disregarded settlement demands as improper considerations in valuing a case for these purposes. R & R p. 3 n. 1. The PCOA acknowledges the R & R correctly does not consider confidential discussions occurring in settlement conferences, but argues Reed herself made those discussions "public" through her counsel's demand letters to defense counsel: "The numbers mentioned as to the settlement demand in [PCOA's] opposition to the motion for fees were taken from the recitation of the settlement conference discussions as recounted by correspondence from plaintiff's counsel to counsel for the defendant." PCOA Obj. 2:6–

11. To the extent PCOA seeks to have the court consider the amounts plaintiffs communicated to defendant in connection with settlement negotiations as a measure of the value of their claims for purposes of comparing their much lower recovery at trial as a rationale for abandoning the lodestar calculation methodology, this court rejects the proposal.

**5.** By its terms, Rule 408 makes inadmissible evidence of offers to compromise "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through

argues even if those negotiations may be relied on in setting a reasonable fee award, "defendant mischaracterizes those negotiations...." Reed Reply 2:5–13. This court considers no settlement-related communications in reaching its decision.

### 3. Reed's Objections To R & R

Reed filed her own Objections to the R & R, asking this court to award lodestar attorneys' fees and costs for Brancart and Brancart in the full amount of the Application: $277,759.00, despite counsel's prior acquiescence in certain deductions during the R & R process. Reed asserts the magistrate judge committed five errors. First, she contends the magistrate judge failed to engage in the appropriate analysis for determining "limited success" under *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. Second, she objects the magistrate judge mistakenly concluded her limited success justified a one-third reduction in the adjusted lodestar, arguing the magistrate judge: erroneously considered her $47,000.00 jury award and denial of injunctive relief to be "limited success;" erroneously considered dismissal of the minor plaintiffs' claims as a factor justifying a significant reduction in the lodestar; erroneously considered dismissal of five of the nine causes of action as a factor justifying a lodestar reduction; erroneously considered plaintiffs' abandonment of the retaliation claims supports a finding of "limited success;" and had no reasoned basis for recommending the one-third reduction in the adjusted lodestar. Third, Reed objects the magistrate judge erred by eliminating counsel's travel time from the lodestar fees award. Fourth, she objects the magistrate judge erred by eliminating time spent by plaintiff's counsel in post-trial motions. Fifth, she objects the magistrate judge erred by refusing to grant the multiplier for contingent risk under state law.

prior inconsistent statement or contra-

The PCOA filed a Reply to Reed's Objections, contending her characterization of the R & R is misleading in that she "isolate[s] an element, cite[s] some authority on that isolated element, and claim[s] an error occurred," whereas the magistrate judge actually "evaluated all of the elements" and the "overall result." PCOA Reply 5:23–28. In consideration of the second prong of the *Hensley* analysis, the PCOA correctly contends: "All of these factors—the failure to obtain injunctive relief, the dismissal of the claims of the minor Plaintiffs, the dismissal of five of the nine claims prior to trial, the abandonment of another claim prior to trial—are part of the analysis of the overall relief obtained by the Plaintiff as compared to the time spent." PCOA Reply 3:15–28.

With respect to Reed's first objection, the PCOA disputes Reed's characterization the R & R fails to properly apply the *Hensley* approach. Portions of the R & R address the separate and distinct nature of certain of the claims and outline the reasons for the recommended reduction in the number of compensable hours. PCOA Reply 1:26–2:8. The PCOA argues: nothing in *Hensley* prohibits the recommended one-third reduction in the lodestar hours; Judge Bencivengo properly evaluated the significance of the overall relief Reed obtained in relation to the number of hours expended as part of the "reasonable hours" determination; the court is under no obligation to rely first and primarily on a *Hensley* analysis to arrive at a fee award figure; and *Hensley* in fact supports the exercise of the judge's discretion to reduce the number of compensable hours from the gross lodestar calculation to a reasonable total in light of the plaintiff's overall recovery. PCOA Reply 2:9–21.

The PCOA contends Reed second objection to the R & R is premised on a flawed

diction...." Rule 408(a).

analysis of the evidence. In particular, the PCOA challenges Reed's reliance on illustrative recoveries in other cases, arguing the examples are not binding on this court and are distinguishable in consideration, among other things, of the equitable relief denied in this case but awarded in Reed's cited authority. The PCOA disputes that any "evidence" beyond the four corners of this case need be considered in the court's exercise of its discretion to calculate the reasonableness of a fee award to Reed. The PCOA argues: "in light of the relief obtained, it would be reasonable to deny fees altogether or award a contingent fee percentage of the award as reasonable fees." PCOA Reply 4:4–6, 3:16.

With respect to Reed's third Objection, the PCOA argues many competent attorneys within the County of San Diego could have handled this case, and Reed cites no authority to support a right "to retain counsel from out of the area at a greater cost and to compel the Defendant to pay those additional costs." PCOA Reply 4:9–17. With respect to Reed's fourth Objection, the PCOA argues elimination of the time spent on post-trial motions "is wholly consistent with the determination the Plaintiff did not prevail on injunctive relief, and the other post-trial motion was necessitated by counsel's error." PCOA Reply 4:20–23. With respect to Reed's fifth Objection, the PCOA argues a multiplier is always discretionary, and Reed fails to make the case a multiplier is warranted in this case, particularly as the R & R recommends a *reduction* in the claimed fees in consideration of the overall relief obtained.

PCOA Reply 3:16. Although the PCOA argues the court is not compelled to follow the traditional lodestar approach in calculating fees—urging this court to abandon that methodology in favor of considering "the reasonableness with which the case was defended, the limited success of the Plaintiff, and award either no fee or one representative of a contingent fee percentage of the recovery" (PCOA Reply 6:9–12)—the PCOA does not quarrel with the manner in which the magistrate judge conducted the lodestar analysis, nor with the result of the lodestar analysis, if that method is ultimately applied to the Application.[6] PCOA Reply 5:21–6:12.

### 4. *Disposition Of Reed's Fee Application*

■ Reed is a prevailing plaintiff, but she succeeded on only some of her claims for relief. The court accordingly must address the two questions posited in *Hensley:* "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. As discussed below, the court answers the first question in the affirmative: Reed failed to prevail, among other things, on any of her claims related to familial status discrimination and punitive damages and was denied any injunctive relief. In answer to the second question, hours expended on the litigation is not an entirely satis-

---

**6.** The court disregards the PCOA's argument the reasonableness of the manner of its defense is an appropriate factor in the evaluation of an attorneys' fees award to prevailing plaintiffs. Its reliance on *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) for the proposition the district court has discretion to deny fees to a prevailing party when the court believes the

opposing party was not unreasonable or presented a meritless case is misplaced. PCOA Reply 2:19–3:4. That case addressed circumstances under which an award of attorneys' fees to a prevailing *defendant* may be appropriate, an analysis predicated on different policies and "quite different equitable considerations." *Christiansburg Garment,* 434 U.S. at 418–19, 98 S.Ct. 694.

factory basis for the fee award, where the only alleged misconduct underlying any PCOA liability sustainable through trial emanated from isolated sexual harassment by one PCOA employee. No invidious policy or practice of the homeowners' association was actually identified, all requested injunctive relief was denied, no punitive damages was colorably triable, none of the independent claims alleged by the minor plaintiffs made it to the jury, and the compensatory damages recoveries reflect the jury's apparent assessment the scope of the harm was narrow and the nature of the underlying wrongdoing isolated.

The Special Verdict recorded the jury's findings the PCOA is liable "for violation of the federal Fair Housing Act or California Fair Employment And Housing Act" with respect to both plaintiffs, and the PCOA is liable for violation of the California Unruh Civil Rights Act and the California Bane Act with respect to Reed. Dkt No. 94. The jury awarded Reed $10,000.00 in compensatory damages, $12,000.00 in statutory damages under the Unruh Civil Rights Act, and $25,000.00 in statutory damages under the Bane (Ralph) Act. Dkt No. 94. The jury awarded the FHCSD $500.00 in compensatory damages. Dkt No. 94.

The "Reed plaintiffs'" claims abandoned or dismissed in their entirety before trial were: the Fifth Cause of Action for California unfair business practices; the Sixth Claim for assault and battery; the Seventh Cause of Action for wrongful entry; the Eight Cause of Action for breach of the covenant of quiet enjoyment; and the Ninth Cause of Action for negligence. Dkt No. 1. In addition, the court did not permit the children's claims to reach the jury, and Reed did not pursue through trial any claim of familial status discrimination.

Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley,* 461 U.S. at 440, 103 S.Ct. 1933.

Some apportionment of the fee award on the basis of the plaintiff's success or failure on particular discrete issues or claims, and based on the elimination of the three minor co-plaintiffs as litigants is appropriate, as reasonably attempted in the R & R. *See Hensley,* 461 U.S. at 437–38, 440, 103 S.Ct. 1933 ("[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole"). The result here, however, does not warrant abandoning the lodestar approach entirely. Reed's compensatory recovery is neither "nominal" nor "de minimis" in amount, and the court can devise no principled manner in which to calculate an alternative "low fee" award in place of the lodestar methodology, as urged by the PCOA. Any fixing of an attorneys' fees award outside that lodestar structure would be wholly arbitrary, despite this court's perception the case was overly broad in its charges and excessive in the theories of recovery pled in consideration of the facts, and despite the court's concern plaintiff could and should have scaled the case back much earlier in the process to avoid escalation of fees. The court finds the R & R properly selected and applied the lodestar method for calculating Reed's attorneys' fees award.

The court views the R & R lodestar analysis as conscientious, well-reasoned, with the determination of recommended reductions in claimed fees and costs amply supported. The PCOA's Objections to the R & R expressly endorse Judge Bencivengo's analysis and result, if the lodestar methodology is to be applied, as this court finds it should be. With respect to Reed's Objections, the court finds this action cannot be characterized as a "complex civil rights litigation involving numerous challenges to institutional practices or conditions," the type of case the *Hensley* court observed can have a vast range of possible success, so that a determination the plaintiff is a "prevailing party" may "say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved" when the plaintiff succeeds in identifying only some unlawful practices or conditions. *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933. The R & R reasonably justifies each recommended adjustment to Reed's claimed attorneys' fees. The court rejects the requested contingent fee risk multiplier requested in Reed's Application for the reasons cumulatively incorporated in this Order. *See Ketchum*, 24 Cal.4th at 1138, 104 Cal.Rptr.2d 377, 17 P.3d 735 ("[t]he trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk," and "the party seeking a fee enhancement bears the burden of proof"). In consideration of the procedural history of this case and the circumstances of the underlying misconduct giving rise to the jury's finding the PCOA liable on fair housing and civil rights theories, for all the foregoing reasons, the court *OVERRULES* the PCOA's Objections to the R & R, *OVERRULES* Reed's Objections to the R & R, and *ADOPTS* the R & R reasoning and result with respect to Reed's Application for fees and costs as a prevailing party in this civil rights action.

## C. *FHCSD Application*

### 1. *R & R Fees And Costs Award Recommendation*

The FHCSD's Application seeks $59,600.00 in attorney's fees compensation for 388.25 hours expended from a November 15, 2004 consultation with Reed regarding the Complaint through trial, post-trial motions, and preparation of the fee Application. Dkt No. 115, Exh. 3. The FHCSD submitted a costs bill in the amount of $5,209.69 for mileage reimbursement, deposition transcripts, deposition copies, postage, taking of depositions, equipment at trial, a $1,500.00 consultant's fee, a certified copy of MacDonald's criminal records, and FedEx costs. Dkt No. 115, Exh. 4. The FHCSD's total request is for $64,809.69 in fees and costs.

Through the Complaint, the FHCSD sought injunctive relief, compensatory damages, and punitive damages for having had to investigate and "counteract" PCOA's allegedly discriminatory conduct, joining in three of the nine causes of action pled in the Complaint: the First Cause of Action for violation of the federal Fair Housing Act; the Second Cause of Action for violation of the California Fair Employment and Housing Act; and the Ninth Cause of Action for Negligence. Through the time the Pre–Trial Order was entered, the plaintiffs continued to assert the PCOA discriminated based on both familial status and sex. As discussed above, the familial status discrimination claims and the punitive damages claims were not submitted to the jury, the trial proceeded only on the sex discrimination allegations predicated on MacDonald's harassment of Reed, and the court dismissed all claims for equitable relief thereafter.

As summarized by the FHCSD in seeking an award of its fees and costs, the "basis of FHCSD's claim against the [PCOA] is based on two theories of relief described in jury instructions 12 [ [7] ] and 23

---

7. *"Organizational Plaintiff.* Plaintiff Fair Housing Council of San Diego ... is a non-

[ 8]." Dkt No. 115 (Joinder And Separate Brief Regarding Fees) 2:2–7. The FHCSD argues its tried claims required it "to *first* prove the discriminatory housing practice (sexual harassment of Joann Reed), and then it had to prove that either it diverted resources to the investigation of the complaint, or that its mission was frustrated by the discriminatory act, or both." Dkt No. 115, 2:2–7; FHCSD Appl. 2:18–19 ("Not only did FHCSD had [*sic* ] to prove up its own case (the diversion of resources and/or frustration of mission) but it also had to prove Joann Reed's case"). "Specifically, FHCSD sought damages for its investigation expenses and for the cost of its anti-discrimination advertising to the residents of PCOA." Dkt No. 115, 2:8–9. The jury's $500.00 total damages award to the FHCSD was, by the FHCSD's own reckoning, "most likely for FHCSD's anti-discrimination advertising to the residents of PCOA," compensation amounting to about half its out-of-pocket expenses in that endeavor. Dkt No. 115, 2:10–11.

A civil rights plaintiff who recovers damages in any amount, whether compensatory or nominal, associated with success on any significant issue in the litigation *which achieves some of the benefit that plaintiff sought in bringing suit,* is a "prevailing party" for purposes of the attorneys' fees

provision in federal statutes such as the one relied on here. *Farrar,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The R & R acknowledges the FHCSD is a prevailing party in this action, and pursuant to *Hensley,* 461 U.S. at 429, 103 S.Ct. 1933, a prevailing plaintiff in a federal civil rights case should recover attorneys' fees unless special circumstances would make an award of fees unjust. R & R 2:2–4. Nevertheless, the R & R recommends the FHCSD's Application be denied in its entirety on grounds: it received none of the injunctive relief or punitive damages it sought; the jury's compensatory damage award "did not even cover the expenses the FHCSD claimed it incurred in this matter;" [9] and the result it obtained "is a technical victory at best in comparison to the relief sought." R & R 3:14–22.

Judge Bencivengo noted, among other criticisms, the FHCSD failed to meet the "prevailing attorneys' burden of establishing entitlement to an award and [to] document the appropriate hours expended," citing *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. R & R p. 4, n. 1. The R & R also observes the Application "incorporates time spent by [the FHCSD's counsel] working for co-plaintiff Reed, such as preparing her for trial.... The FHCSD cannot recover for attorney time or expenses incurred to litigate the co-plaintiff's separate claims." [10] R & R p. 4, n. 1. The R &

profit organization permitted to bring suit under the Fair Housing Act and California Fair Employment and Housing Act on its own behalf for injury in its ability to carry out its efforts to assure equal access to housing and to eliminate unlawful housing discrimination." Jury Instruction No. 12.

**8.** *"Damages: Fair Housing Council.* In the case of plaintiff Fair Housing Council of San Diego, damages may include compensation for: (1) the effect of diverting its resources away from its other programs and activities in order to identify, investigate and counter-act the defendants' unlawful conduct; and (2) the frustration to its mission and purpose to promote equal opportunity in housing and the elimination of all forms of illegal housing

discrimination. In determining the amount to award the Fair Housing Council, you may consider the amount necessary to counter-act defendants' wrongdoing." Jury Instruction No. 23.

**9.** Based on the testimony of plaintiff's witness Mary Scott Knoll, the magistrate judge concluded a "damage award to fully compensate this plaintiff for its expenses was $1,000.00 at a minimum, yet the jury only awarded half that amount and the court awarded no equitable relief." R & R 3:17–21.

**10.** By way of justification, the Application represents: "FHCSD's counsel acted as Christopher Brancart's primary contact in

R is also critical of the Application for failure to eliminate time spent on abandoned claims. This court notes the FHCSD's counsel does represent he removed from his fee statement "considerable time" he spent preparing witness Cynthia Blaine because plaintiffs ultimately determined her testimony would not be necessary. FHCSD Appl. 4:1–4. However, line items included in FHCSD's fee statement still refer to "Cynthia Blaine" in connection with contacting and preparing witnesses. *See* FHCSD Appl. Exhibit 3, pp. 2, 4. The court presumes the R & R's rejection of the portion of claimed fees for time the FHCSD spent on post-trial motions [11] tacitly incorporates the same rationale as for the portion of time spent in that activity correspondingly rejected in Reed's fee Application. Judge Bencivengo found "the recovery does not justify the award of fees" to this plaintiff, and recommends the FHCSD's Application be denied in its entirety. The R & R makes no separate analysis of claimed costs.

### 2. *FHCSD's Objections To R & R And PCOA's Reply*

The FHCSD raises four Objections to the R & R. First, it contends the R & R "misstates the basis of FHCSD's claim." FHCSD Obj. 1:24. "While it is true that FHCSD pled familial status discrimination, and sought to change rules, policies, practices or procedures that had a discriminatory effect on families with children, FHCSD's damages were the result of [PCOA's] failure to prevent and protect Plaintiff Joann REED from sexual harassment suffered at the hands [of] Kent MacDonald, its employee." FHCSD Obj. 1:24–28. That description is indistinguishable from Reed's personal claims. It also deviates from the Complaint allegation that the FHCSD's damages arising from the PCOA's alleged "discriminatory housing practices" were associated with the PCOA's "promulgat[ing] and enforc[ing] rules and regulations that discriminate against families with children because of their familial status," and "the Fair Housing council designed and implemented an education and outreach project, providing Casablanca residents with information regarding their fair housing rights." Compl. ¶¶ 18–19.

In support of its Application, the FHCSD characterizes its claimed time and expenses "acting as REED's co-counsel" as "time spent on FHCSD's claims," contending it had to establish the discriminatory acts, *i.e.* "the sexual harassment by Kent MacDonald, and the failure of PCOA to respond to REED's complaints," in order to "establish a basis for which it would

San Diego." FHCSD Appl. 4:10–11. However, the PCOA's objection that Reed could have hired local counsel and avoided the travel time and costs associated with her retention of the out-of-town Brancart & Brancart firm persuaded the magistrate judge to recommend Reed's fees and costs recovery be reduced by those amounts, as it does this court. Moreover, this court extends that observation to the otherwise unnecessary need for a "local contact" for Reed and "liaison" for the Brancart firm, finding it would be unjust to shift liability to the defendant for associated fees and costs avoidable but for the geographic obstacles voluntarily assumed by Reed in retaining the Brancart firm. The extent to which FHCSD's counsel acted as "second

chair to Christopher Brancart" (FHCSD Appl. 4:11–12) similarly strikes this court as an instance of "overstaffing" this case. *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. That overstaffing is similarly reflected in the double attendance of counsel for both Reed and the FHCSD at four depositions identified in the FHCSD Application and for which both seek recovery of fees. FHCSD Appl. 2:24–27.

11. "Mr. Treglio also consulted with various other members of Brancart & Brancart by email and phone over various matters as they came up. In particular, Mr. Treglio was in regular contact with Ms. Elizabeth Brancart regarding the post-trial motions." FHCSD Appl. 3:24–27.

recover" damages, an essential component of its Article III standing to sue. FHCSD Obj. 2:3–7. However, Reed was separately represented by two attorneys in the Brancart and Brancart firm, and it does not appear from anything before the court the FHCSD' assistance in the preparation of Reed's case was pursuant to any formal co-counsel relationship for billing or fee award purposes. The court calculates fee recoveries based on counsel's work on behalf of its own client, alleged to be a separately injured party.

The FHCSD disputes it received only a nominal award. Judge Bencivengo acknowledged a damages award adequate to fully compensate it for its expenses was "$1,000 at a minimum," so the jury's award of $500.00 represents half the FHCSD's actual damages. On that basis, the FHCSD distinguishes *Farrar*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494, where a civil rights plaintiff "prevailed" but received only nominal damages and achieved only "technical" success. *See Morales*, 96 F.3d at 362 (limiting invocation of the *Farrar* rule to such cases). The *Farrar* Court defines as "purely technical" or "de minimis" a victory evidencing: (1) a substantial difference between the damages sought and the damages awarded, (2) the legal issue on which plaintiff prevails is relatively unimportant, and (3) the litigation serves no discernible public purpose. *Farrar*, 506 U.S. at 121–22, 113 S.Ct. 566 (O'Connor, J., concurring). The FHCSD argues "nominal" damages are those in name only, "a mere token or 'trifling,'" which highlights the plaintiff's failure to prove actual, compensable injury. FHCSD Obj. 2:19–22, distinguishing its recovery of 50% of its claimed actual damages. The FHCSD argues the magistrate judge erred in denying recovery of any of its fees and costs as distinguishable from those principles.

However, the FHCSD fails to factor in the effect on the award analysis of its failure to prevail on its additional claims for injunctive relief and punitive damages. The court appropriately considers those unsuccessful claims associated with its exercise of discretion under fee-shifting statutes when evaluating the results of the litigation as a whole. The FHCSD's compensatory damages in this litigation were the relatively modest outlay of "advertising" funds, only half of which the jury awarded, with no other recovery of any kind on any of the legal theories advanced. Moreover, the legal issue on which it prevailed was "relatively unimportant" for that institution or the public, given the isolated nature of MacDonald's sexual harassment of Reed, and prevailing on the issue advanced no public purpose in any broader remedial sense inasmuch as the PCOA was not found to have discriminatory policies or practices this litigation could redress.

Second, the FHCSD objects its costs are taxable under FED.R.CIV.P. 54(d): "Except when express provision therefore is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court directs otherwise." It argues the R & R lacks sufficient justification to recommend denial of the FHCSD's claimed costs. FHCSD Obj. 3:2–13.

Third, the FHCSD disputes as error the R & R finding it failed to meet its burden of proof to establish hours reasonably expended in pursuit of claims on which it prevailed, arguing the R & R overstates the amount of time spent on familial status issues. FHCSD Obj. 4:10–11. It represents its initial investigation made two findings: that the PCOA had allowed MacDonald to harass Reed on the basis of her sex, and that the "PCOA had a few rules

that appeared to place an unreasonable burden on families with children." FHCSD Obj. 3:22–25. It further represents the FHCSD deemed the sexual harassment "to be the most serious and lead [*sic*] to FHCSD's decision to litigate," and the flyers it sent to PCOA residents "to counteract the discriminatory effect of the PCOA's failure to take action only discussed sexual harassment issues, not familial status discrimination." FHCSD Obj. 3:26–4:2. It characterizes its claim for familial status discrimination as "secondary" to the sexual harassment claim, and it "withdrew its claim for familial status discrimination" when it was "clear that PCOA would not seek settlement," a representation enigmatically contrary to plaintiffs' continued pursuit of those other pled claims to the time of trial. FHCSD Obj. 4:3–7.

The FHCSD also contends the R & R erred in finding it failed to limit the fees claimed for work done to claims on which it prevailed. In support of that contention, the FHCSD represents its counsel "did, in fact, redact the time spent on the familial status discrimination," and a review of attorney James M. Treglio's Fee Statement reveals it "makes no mention of any time spent on familial status claims." FHCSD Obj. 4:10–15. However, nor does it make any mention of particular time spent on *any* discrete claim other than a small amount of time specifically identified as spent reviewing records or timeline for "post complaint harassment of Reed." *See* Dkt No. 115, Ex. 3. In addition, the FHCSD argues "[if] the Magistrate Judge wished to deny fees to the FHCSD for time spent on [the issue of equitable relief], that would have been easily accomplished by reviewing the billing statement … and cutting all post-judgment time." FHCSD Obj. 4:17–20. The latter suggestion, however, takes no account of the time presumably spent in the process of evaluating whether to bring such claims in the

Complaint, discovery in support of those claims, and other activity necessarily undertaken to prepare to try the equitable relief allegations beyond mere post-trial motion preparation time.

Fourth, the FHCSD objects the R & R "leads to a grossly inequitable result." FHCSD Obj. 4:23. It relies on statements in both its own and Reed's Fee Applications to insist "FHCSD's counsel, James Treglio, acted as Christopher Brancart's co-counsel," and "[t]o that end, James Treglio spent a great deal of time preparing Plaintiffs' witnesses for trial … [and] was the only attorney for Plaintiffs present during the depositions of" six named witnesses. FHCSD Obj. 4:23–28. The FHCSD makes the observation (alarming to this court): "Without FHCSD's assistance, Joann **REED's costs and fees [sought through the Reed Application in the amount of $347,198.75, including Reed's claimed 25% multiplier for contingent fee risk] would have risen dramatically,**" as Reed's counsel is "more experienced than James Treglio" and has a correspondingly higher hourly fee. FHCSD Obj. 4:28–5:2 (emphasis added). "This appointment of co-counsel was designed specifically to reduce costs," so that a denial of any recovery of FHCSD's fees allegedly causes "PCOA [to] gain[] the benefit of a reduction of costs by Plaintiff REED without the cost of paying for FHCSD's fees." FHCSD Obj. 5:3–6. However, neither plaintiff presents evidence of the FHCSD's "appointment as co-counsel" to Reed, and Mr. Treglio presents his fees request solely on behalf of his client, the FHCSD (other than styling the request as also a "joinder" in the Reed Application, purporting to incorporate her Application by reference and emphasizing the "FHCSD has an identical position regarding the facts and law" as does Reed). Dkt No. 115, p. 1.

Finally, the FHCSD argues the R & R "places too much value on the amount of the recovery," whereas the jury's verdict purportedly "clearly" found "(1) FHCSD was injured by PCOA's *practices*" and "(2) FHCSD was awarded compensation for those injuries." FHCSD Obj. 5:7–15 (emphasis added), *citing, inter alia, Rivera*, 477 U.S. at 574, 106 S.Ct. 2686 and *Combs*, 285 F.3d at 908 for the proposition attorneys' fees in civil rights cases need not be proportionate to the amount of damages a plaintiff recovers. For all those reasons, the FHCSD requests the court reject the R & R and award its fees and costs as claimed in its Application.

The PCOA filed a Reply to the FHCSD's Objections to the R & R, again emphasizing any award of attorneys' fees is wholly discretionary. *Farrar*, 506 U.S. at 115, 113 S.Ct. 566 (affirming denial of any attorneys' fee award under the civil rights statute where plaintiffs sought millions in compensatory damages and recovered nominal damages of one dollar, confirming the court has discretion to award no fees without reciting the several factors bearing on reasonableness); *see also Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119, 1121–22 (9th Cir.2000) (an Americans With Disabilities Act case confirming the court can award "low fees or no fees" without reciting the twelve *Kerr* factors, but concluding in that case the plaintiff obtained more than a "technical victory," and so was entitled to a fee award the court should have computed as a lodestar figure).

First, the PCOA represents the FHCSD effectively acknowledges it "learned in their investigation there was no issue of housing discrimination in PCOA, once Kent McDonald, the sexual harasser, was terminated and once Joann Reed, the victim, moved out of the condominium complex" at the end of 2004, and "[t]here was no continuing course of conduct to enjoin or prohibit," with the "end result of this case demonstrat[ing] there was no basis for injunctive relief whatsoever." PCOA Reply 2:3–9. That characterization is borne out by the proceedings before, during, and after trial, and undermines the FHCSD's representation the PCOA's "practices" were the cause of the FHCSD's injury. The PCOA describes the continued presence of the FHCSD in this litigation as a "tag-along" undertaking. PCOA Reply 2:10–11. The PCOA disputes the FHCSD is entitled to recover any fees for "time spent acting as Reed's co-counsel" in the absence of any authority approving such a recovery by counsel for one party who merely represents it was also acting informally as co-counsel for another party. PCOA Reply 2:12–16. The PCOA also contends the *Farrar* factors are present in this case: (1) there was a substantial difference between the damages sought and those awarded; (2) the legal issue on which the FHCSD prevailed was unimportant; and (3) the litigation served no discernable public purpose.[12] PCOA Reply 3:9–13. The PCOA acknowledges although the legal issue "arising out of a homeowners association employee's actions may not be unimportant, that issue was not dependent upon anything FHCSD did in this case," and the "issue was pursued and briefed by Reed's counsel," rendering "the legal issue pursued by FHCSD ... nonexistent." PCOA Reply 3:20–25.

Second, the PCOA urges the court to adopt the R & R recommendation, con-

---

**12.** "FHCSD was proceeding after [*sic*] injunctive relief. They were attempting to obtain some form of relief which would benefit 500 other members of the PCOA condominium complex. They received none of that. While the 'damages' of a monetary nature were minimal at best, the pursuit of injunctive relief was paramount. Furthermore, FHCSD was pursuing punitive damages, which were not awarded." PCOA Reply 3:13–19.

tending: "This is a perfect example of a situation in which FHCSD should never have been involved. Certainly, their role was essentially nothing more than a tag-along role with Joann Reed." PCOA Reply 4:11–14. While such an argument can be made given the claims made and results obtained, this court assesses the costs issue differently and separately from the attorneys' fees issue, as discussed below.

Third, the PCOA suggests the FHCSD's objection regarding treatment of time spent on the familial status issues is misplaced because the R & R recommends *no* fees be awarded, without discussing any apportionment of time among issues. As part of its *Hensley* analysis in reaching that conclusion, the R & R merely alludes to the fact the Complaint states familial status discrimination allegations abandoned without jury deliberation on the issues. PCOA Reply 4:17–5:2.

The PCOA characterizes the FHCSD's fourth objection as "demonstrat[ing] the fallacy of the request for fees," illustrating the "FHCSD was riding the coattails of Reed's counsel," and devoid of any authority for the proposition one attorney is entitled to recover fees "for acting as 'co-counsel' to another attorney" representing a different party. PCOA Reply 5:5–9. The PCOA contends the only "inequity" associated with the FHCSD's fees and costs requests would be to grant the Application. "They absolutely established by their own investigation there was no basis for FHCSD to sue PCOA for discrimination," but "they were not satisfied with their own investigation and determined to pursue a lawsuit seeking damages, injunctive relief, and punitive damages," then "lost on all counts except for a very minor amount of damages."[13] PCOA Reply 5:12–17.

### 3. *Disposition Of FHCSD Application*

The court finds the PCOA's summary of the FHCSD's relationship to Reed's Complaint and its assessment of the FHCSD's participation through trial and post-trial proceedings to be pertinent to the decision whether to adopt the R & R recommendation the FHCSD be denied an award of any of its claimed attorneys' fees:

[T]his litigation from the standpoint of FHCSD served no purpose whatsoever, discernable or otherwise. This was purely an isolated situation in which a homeowners association hired a property patrol individual who ended up sexually harassing one of the occupants of a condominium in the complex. Once that individual was terminated and the victim moved from the complex, there was absolutely no discernable purpose for this litigation outside any compensation to Ms. Reed. FHCSD proved by its own investigation there was no insidious [*sic*] discrimination.

PCOA Reply 3:26–4:6.

The court finds Reed had her own counsel to prove up her case, and the "diversion of resources" or "frustration of mission" damages peculiar to the entity plaintiff's was found by the jury to be compensable in the amount of just $500.00, half its claimed expenses to prepare and distribute anti-discrimination materials at the condominium complex. To the extent the FHCSD suggests the court should fold its attorneys' fees claimed for advancing Reed's trial preparation into the "diversion of resources" portion of "its own case," the court notes authority prohibits a party's escalation of expenditures recovery of which may then constitute a "windfall" if awarded post-

---

**13.** The PCOA also contends, in reliance on *Christiansburg*, denial of a fees and costs award to FHCSD is proper and within the discretion of the court because the "PCOA's defense of this case as to FHCSD was meritorious." PCOA Reply 5:18–19. However, the court distinguishes *Christiansburg*. *See* fn 7, above.

trial as fees and costs taxed against the losing party. *See Rivera,* 477 U.S. at 580–85, 106 S.Ct. 2686. As noted above, this court perceives the case appears to have been overstaffed. *See* FHCSD Appl. 4:5–7 ("Except for the separate discovery responses, and the preparation of Mary Scott Knoll, counsel for FHCSD acted, in all intents and purposes, as second chair to Christopher Brancart, who was lead counsel in this case," observations silent on the role of the *second* attorney in the Brancart and Brancart firm who also claims fees in prosecuting Reed's case as co-counsel).

 In evaluating an award of a plaintiff's attorneys' fees in a civil rights case, the court must consider the significance of the legal issues on which the party prevailed and the public purpose served by litigation of its claims. *See Morales,* 96 F.3d at 362–63. This case did not involve a defendant's institutional policy or a pattern and practice that only a lawsuit could stop. By all evidence elicited at trial, the only housing discrimination imputable to the PCOA was its employment of MacDonald as a security guard and delay in acting on Reed's complaints. The sexual harassment misconduct was personal to him. He was not implementing any identified PCOA policy. Plaintiffs established no intentional conduct or improper motive of the PCOA, distinguishing this action from civil rights cases exposing widespread or inveterate discrimination. *See, e.g., Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (Chicano plaintiffs successfully sued city's police force and individual officers alleging civil rights violations arising from the racially discriminatory manner of defendants' conduct and recovered their attorneys' fees under 42 U.S.C. § 1988); *Combs,* 285 F.3d 899 (awarding attorneys' fees to nonprofit fair housing organization in its successful suit against an apartment complex owner who engaged in intentional and repeated racially discriminatory housing practices as proven by the organization's "testers").

 The FHCSD disputes the R & R's characterization of its recovery as only a "technical" victory, arguing the 50% recovery of the $1,000.00 in damages sought cannot be construed as "so insignificant" that attorneys' fees should be denied in their entirety on that basis. *See Farrar,* 506 U.S. at 113–114, 113 S.Ct. 566 (holding "the prevailing party inquiry does not turn on the magnitude of the relief obtained" in response to the question "whether a nominal damages award is the sort of 'technical,' 'insignificant' victory that cannot confer prevailing party status"). Once prevailing party status is conferred, the required inquiry for the proper exercise of the court's discretion in awarding attorneys' fees is triggered. " '[T]he *degree* of the plaintiff's success' does not affect 'eligibility for a fee award.' " *Id.* at 114, 113 S.Ct. 566 (citation omitted); *see Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir.2000) ("Although the size of the relief may impact the size of the eventual fee award, it 'does not affect *"eligibility* for a fee award ...." ' ") (citations omitted). Based on that authority, under the Fair Housing Act statutory fee award provision, the FHCSD is "eligible" for a fee award.

However, applying the *Hensley* guidelines, to determine whether the court should exercise its discretion to order an award to an "eligible" plaintiff and, if so, what fee amount would be "reasonable," "the degree of the plaintiff's overall success goes to the reasonableness' of a fee award." *Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (citation omitted) ("the degree of success obtained" is "the most critical factor" in the reasonableness analysis). "In some circumstances, even a plaintiff who formally 'prevails' ... should receive no attorney's fees at all." *Id.* at 115, 113 S.Ct. 566.

If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933; *see Farrar,* 506 U.S. at 114, 113 S.Ct. 566. Although the court concurs with the FHCSD the $500.00 the jury awarded should be construed as "compensatory" rather than "nominal" damages, the admonition that a lodestar approach is not always appropriate seems applicable here. The court's discretion in the fixing of fees in such circumstances must be exercised giving "primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar,* 506 U.S. at 114, 113 S.Ct. 566, *quoting Rivera,* 477 U.S. at 585, 106 S.Ct. 2686. The *nature* of the damages awarded to the FHCSD similarly informs the exercise of that discretion: "the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness ... or multiplying 'the number of hours reasonably expended ... by a reasonable hourly rate.'" *Id.* at 115, *citing Hensley,* 461 U.S. at 430, n. 3, 433, 103 S.Ct. 1933. The court acknowledges the presumption in civil rights cases a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust, but the court retains discretion to deny attorneys' fees. *See Hensley,* 461 U.S. at 429, 103 S.Ct. 1933; *see also Fischer,* 214 F.3d at 1119, n. 2. The court finds special circumstances militate against shifting the burden of FHCSD's attorneys' fees, in addition to those of Reed's counsel, to this defendant, in particular but not exclusively the overlap and overstaffing in the preparation of this case, the very belated paring down of the scope of the issues to be tried predicated on one PCOA employee's sexual harassment of Reed, and the results obtained compared to the litigation as a whole.

As noted in the R & R, the prevailing attorneys bear the burden of establishing entitlement to an award and must document the reasonableness of hours expended. R & R p. 4, n. 1, *citing Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. The FHCSD's Application seeks "fees in an amount more than 100 times greater than its recovery, makes no reductions for time spent on dismissed and unsuccessful claims," and "incorporates time spent by [FHCSD's counsel] working for co-plaintiff Reed" on her separate claims. R & R p. 4, n. 1. The "[A]pplication does not even attempt to meet its burden to establish hours reasonably expended in pursuit of claims upon which it prevailed." *Id.* While compensation for attorneys' fees is not strictly limited to those incurred solely on matters on which the prevailing party succeeded, nevertheless whether an award is reasonable, or whether it is reasonable to make the award, depends upon a comparison of "the scope of the litigation as a whole" to the relief obtained. *Hensley,* 461 U.S. at 439–40, 429, 103 S.Ct. 1933.

The court adopts the R & R finding an award of the FHCSD's claimed attorneys' fees would be "unjust," and exercises its discretion to deny the FHCSD any recovery of fees. The FHCSD's pursuit of this litigation accomplished little for itself or its mission. Reed's damages recovery was predicated on her personal claims of sexual harassment by a PCOA employee. MacDonald was no longer employed by the PCOA, and she had moved from the Penasquitos Casablanca condominium complex years before this case was tried. The FHCSD's counsel may have assisted Reed in obtaining her damages recovery, but she recovered on claims peculiar to herself. No result for either plaintiff in this litigation appears to this court to have vindicated any broader concern than that of compensation and a statutory award to an individual whose civil rights the jury found

were violated by the conduct of a single employee of the homeowner's association. Neither plaintiff ultimately pursued the punitive damages claims, and neither was successful on claims for equitable relief. Unlike in *Morales,* the results of the FHCSD's participation in this litigation furthered no public purpose to protect Reed or others from similar exposure to the type of isolated harassment she endured from one PCOA employee, and sent no particular message of broader significance to homeowners' associations. The results obtained by the FHCSD's counsel for his *actual client* is the pertinent consideration. In this court's view, the extent of success the FHCSD achieved in this litigation, while not measured solely by the amount of damages recovered, must include some measure of benefit within the scope of its mission conferred on others by winning a civil rights case to render an attorneys' fee recovery just here. The fee Application contains no such demonstration.

For all the foregoing reasons, the court **OVERRULES** the FHCSD's Objections to the recommended result on the fees portion of its Application and **ADOPTS** the R & R recommendation the FHCSD be denied an award of attorneys fees.

The R & R performed no separate costs award analysis in recommending the FHCSD take nothing under its Application. The court **SUSTAINS** the FHCSD's Objections to the R & R on the issue of costs, and **REJECTS** the summary recommendation the FHCSD recover none of its litigation costs. Under FED.R.CIV.P. 54(d), costs are allowed "as of course to the prevailing party" absent an instruction from the court otherwise or when express provision regarding costs appears in a statute or federal rules.

The PCOA does not specifically challenge any of the line item claimed costs. The FHCSD represents it "paid for most transcript costs in this litigation," it "purchased equipment for litigation purposes," it "found and contracted with Mr. David Kline, Esq., who provided consultation on case strategy, assisted on plaintiff's motion on jurisdiction, and acted as reader of the depositions during the first day of trial." FHCSD Appl. 4:13–17. Its itemized list of costs totals $5,209.69. FHCSD Appl. Exh. 4. The court deducts from that total the $59.99 cost item claimed for a "projector table" as a reusable item of furniture. No information about any special qualifications, need for, or reasonableness of the $150.00 hourly rate of David Kline, Esq. is provided to support the $1,500.00 line item cost for ten hours of his "consultation" services "on case strategy" and his additional services to "assist[ ] on plaintiffs' motion on jurisdiction," particularly when three counsel of record also billed time on the plaintiffs' side of this litigation. FHCSD Appl. 4–17, Exh. 4. Moreover, the court is not persuaded the cost to have the consultant "act as reader of the depositions during the first day of trial" is reasonably taxable to defendant. *Id.* Accordingly, the court also deducts the $1,500.00 line item for Mr. Kline's costs. In addition, local FHCSD counsel provides no authority to support the claim for travel to the courthouse for seven days of trial at $.35 per mile, in the total amount of $140.63, and the court deducts that line item.

The court has verified the costs claimed in the FHCSD's Application for six "deposition transcripts" (totaling $1,643.14) are not duplicated in Reeds Application. Two additional line item costs are identified as for "depositions." The court assumes those costs (totaling an additional $1,194.10) were for the noticed taking of one and for a transcript of the other, because "copying of depositions" in the claimed amount of $128.57 is listed as a separate line item. FHCSD Appl. Exh. 4. Accordingly, the court **REJECTS** the R &

R recommendation that no costs be awarded to prevailing party the FHCSD, but deducts $1,700.62 from the claimed costs, for a total costs award of $3,509.07.

## III. CONCLUSION AND ORDER

For all the foregoing reasons, **IT IS HEREBY ORDERED:**

1. Both sides' Objections to the R & R on prevailing plaintiff Reed's fees and costs Application are *OVERRULED.*

2. The R & R recommendation Reed be awarded reduced attorneys fees in the amount of $161,000.00 and reduced litigation costs and expenses in the amount of $7,673.83, for a total award of $168,673.83, is *ADOPTED.*

3. Prevailing plaintiff the FHCSD's Objections to the R & R on its fees and costs Application are *SUSTAINED IN PART* and *OVERRULED IN PART,*

4. The R & R recommendation the FHCSD be denied any award of attorneys' fees or costs is *ADOPTED IN PART* and *REJECTED IN PART.*

5. The FHCSD shall recover no attorneys' fees on its Application, but shall recover $3,509.07 in litigation costs.

6. Within ten (10) days of the date this Order is entered, the parties shall jointly prepare and e-mail to the chambers of the undersigned District Judge a [Proposed] Final Judgment to terminate this action.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION REGARDING MOTION BY PLAINTIFF JOANN REED FOR AWARD OF FEES AND COSTS

CATHY ANN BENCIVENGO, United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is Plaintiff Joann Reed's application for attorneys' fees pursuant to 42 U.S.C. § 3613(c)(2), California Govt.Code § 12989.2, and California Civil Code § 52. Plaintiff was represented by the firm of Brancart & Brancart. For the reasons set forth below, the Court recommends Plaintiff's application be **GRANTED,** and fees and costs be awarded in the amount of $168,673.83.

## II. BACKGROUND

Plaintiff Joann Reed was a tenant at the Penasquitos Casablanca condominiums. She resided there with her two sons, Milton and Jamel Rodgers and her grandson, Antwan Ramsey. Kent McDonald was employed by defendant, the Penasquitos Casablanca Owner's Association ("PCOA"), as a member of the property patrol. Ms. Reed was sexually harassed in her home by Mr. McDonald during the time he was employed by the PCOA.

On January 14, 2005, Ms. Reed filed a complaint against the PCOA for compensatory and punitive damages and injunction relief on her own behalf and as guardian *ad litem* on behalf of her children for violations of the Federal Fair Housing Act; California Fair Employment and Housing Act; California Unruh Civil Rights Act; California Bane Civil Rights Act; California Unfair Business Practices Act; Assault and Battery; Wrongful Entry; Breach of the Covenant of Quiet Enjoyment; and Negligence. Ms. Reed alleged in part that the PCOA engaged in gender discrimination in violation of her civil rights and those of her children due to its inaction in response to her complaints about Mr. McDonald's sexual harassment. She also alleged that the PCOA unlawfully retaliated against her and her family due to her complaints about Mr. McDonald, forcing her family to vacate their home.

At the time the parties submitted their proposed Pre–Trial Order, on August 15, 2006, Plaintiff elected to narrow her claims to the Federal and State Fair Housing Acts and the State Civil Rights Acts based

on discrimination and retaliation and the breach of the covenant of quiet enjoyment. When trial commenced on January 3, 2007, Plaintiff further narrowed her claims to only the Federal and State Fair Housing Acts and the State Civil Rights Acts based only on discrimination by reason of sexual harassment on behalf of herself and her children. Before the case went to the jury, the Court dismissed the claims of the children and the punitive damages claim. The jury found that PCOA violated the Federal and/or State Fair Housing Act, the California Unruh Civil Rights Act and the California Bane Act with respect to Ms. Reed. She was awarded a total of $47,000: $10,000 for the Fair Housing Act violation; $12,000 for the Unruh Civil Rights Act violation and a $25,000 penalty for the Bane Act violation.

Plaintiff's post-trial motion for injunctive relief was denied. Defendant's post-trial motion dismissing the $25,000 penalty awarded to Plaintiff pursuant to the Bane Act, which does not provide for penalties in cases brought by private individuals, was granted. The Court, however, allowed Plaintiff to amend the pleading to conform to the evidence and reinstated the penalty under the California Ralph Act, Civil Code § 51.7.

On May 14, 2007, Plaintiff filed her application for an award of attorneys' fees and costs. On May 31, 2007, Defendant filed its opposition. On June 15, 2007, Plaintiff filed her reply.

### III. LEGAL STANDARD

The Federal Fair Housing Act provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). The Cali-

fornia Fair Employment and Housing Act also provides the court with discretion to award fees. See Cal. Govt.Code § 12989.2. The California Civil Code also provides for an award of fees against persons who violate the Unruh Civil Rights Act or the Ralph Act. See Cal. Civil Code § 52.

A prevailing plaintiff in a federal civil rights case should recover attorneys' fees unless special circumstances would make an award of fees unjust. Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Ms. Reed is a prevailing plaintiff. The jury returned a verdict in her favor on all the civil rights actions presented to it. The prevailing party inquiry does not turn on the magnitude of the relief obtained. "The degree of the plaintiff's success does not affect eligibility for a fee award." Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Ms. Reed is entitled to recover fees.

Defendant contends that the court should limit plaintiff's fee recovery because her success was limited. Plaintiff started with nine claims, five of which were abandoned by plaintiff after two years of litigation just prior to trial. Further defendant contends plaintiff's monetary recovery was extremely limited on the four claims that were submitted to the jury. See PCOA's Brief in Opposition to Plaintiffs Motion for Attorney's Fees ("PCOA Brief"), at 4. Defendant urges that the court in its discretion can award low fees or no fees, to a civil rights plaintiff who receives such limited success. Id. at 3–4, citing Fischer v. SJB–P.D. Inc., 214 F.3d 1115, 1119 (9th Cir.2000).

In this case, Ms. Reed was awarded $47,000. Her complaint did not specify a demand.[1] By contrast, the plaintiff in

---

1. Defendant's opposition references settlement demands made by plaintiff Reed and her counsel prior to trial to support its argument that her award was limited in comparison to her demand and therefore the court should limit her fee recovery. Settlement conference discussions are privileged and confidential, see Civ.L.R. 16.3(h), and the

*Farrar* demanded $17 million from six defendants and received $1 from one defendant, exemplifying the type of victory that does not merit a fee award. *Farrar*, 506 U.S. at 116, 113 S.Ct. 566 (O'Connor concurring). This court does not conclude that a verdict in the amount of $47,000 was such an "extremely limited" recovery for plaintiff that the Court should deny the fees entirely. The degree of the plaintiff's overall success does, however, go to the reasonableness of a fee award. "The most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* at 114, 113 S.Ct. 566.

The calculation of a reasonable fee award involves a two-step process. First, the court must calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the results obtained; and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir.1996). The second step involves the district court, in its equitable discretion, adjusting this amount "on the basis of other considerations." *Lytle v. Carl*, 382 F.3d 978, 988 (9th Cir.2004).

The prevailing attorneys bear the burden of establishing entitlement to an award and must document the appropriate hours expended and hourly rates. *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. Once the applicants submit evidence of the appropriate hours spent on litigation, "the party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir.1992). Applicants should make a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours from a fee request. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. "The district court has a great deal of discretion in determining the reasonableness of the fee." *Gates*, 987 F.2d at 1398.

## IV. ANALYSIS

Plaintiff requests attorneys' fees in the amount of $254,799.00 based on the following submission:

| Biller | Hours (Adjusted) | Hourly Rate | Lodestar |
|---|---|---|---|
| Christopher Brancart (Attorney) | 480.2 | $350 | $168,070.00 |
| Elizabeth Brancart (Attorney) | 199.2 | $350 | 69,720.00 |
| Katja Thomas (Sr. Paralegal) | 64.6 | $120 | 7,752.00 |
| Dena Reiner (Paralegal) | 69.6 | $ 95 | 6,612.00 |
| David Winbourne (Litigation Support) | 29.2 | $ 50 | 1,460.00 |
| Jordan Cohen (Litigation Support) | 23.7 | $ 50 | 1,185.00 |
| Total: | | | $254,799.00 |

*See* Reed's Reply to Opposition to Motion for Award of Attorney's Fees and Costs ("Reed's Reply"), at 14. The time records for each biller as well as the declarations of Christopher Brancart and Elizabeth Brancart were submitted in support of plaintiff's fee application. See Reed's Brief in Support of Motion for Award of Attorney's Fees and Costs ("Reed's Brief") and Exhibits thereto.

### A. *Reasonable Hourly Rate*

A reasonable hourly rate is calculated according to the prevailing market rates in

Court will not consider those discussions in assessing fees.

the relevant community. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir.2001). The community where the court sits is the relevant market for determining reasonable fees. *Deukmejian*, 987 F.2d at 1405. Christopher Brancart and Elizabeth Brancart each claim an hourly rate of $350. In addition to their declarations stating that this rate is in line with those prevailing in the community, the Brancarts submitted the declarations of four other attorneys practicing in the Southern District of California doing similar work, who support the Brancarts' assertion that their hourly rate and the rates of their staff were reasonable for this case. *See* Declaration of Elizabeth Brancart in Support of Award of Attorneys' fees and Costs ("E.Brancart Decl."), Exs.10–13.

Defendant does not challenge the reasonableness of the Brancarts' rate or those of their paralegals and litigation support staff. The rates requested by plaintiff are reasonable.

### B. *Hours Reasonably Expended*

The hours claimed by plaintiff in her application reflect certain deductions made from the total hours incurred by Brancart & Brancart. First, Elizabeth Brancart reviewed the time records of the paralegals and litigation support staff and eliminated 52.4 hours, a total of $3,826.00, for time she determined should not be billed to a "fee-paying client." *See* E. Brancart Decl. at ¶ 21.

With that deduction, the total time incurred by Brancart & Brancart during the 29 months of litigation (up to and including the filing of the reply brief for the fee application) on behalf of all four plaintiffs

for all nine causes of action was reported by Elizabeth Brancart as:

| Biller | Hours |
| --- | --- |
| Christopher Brancart (Attorney) | 592.9 |
| Elizabeth Brancart (Attorney) | 213.1 |
| Katja Thomas (Sr. Paralegal) | 69.6 |
| Dena Reiner (Paralegal) | 85.4 |
| David Winbourne (Litigation Support) | 35.7 |
| Jordan Cohen (Litigation Support) | 30.2 |
| **Total:** | 1,026.9 |

From this total time, Ms. Brancart eliminated a total of 36.8 hours of time she attributed to (1) the representation of the three minor children who were not prevailing parties, (2) the dismissal of the retaliation claim, (3) the time spent solely on the issue of punitive damages, and (4) time spent on jury instructions and verdict forms. *See* E. Brancart Decl. at ¶¶ 22–27. Ms. Brancart then made a 5% across-the-board reduction of the hours spent by counsel and staff in order to take into account any time that was spent in "an unnecessary, inefficient or duplicative manner." *Id.* at ¶ 28.

In its opposition to plaintiff's fee application, defendant contended that plaintiff's retention of counsel from Pescadero was unnecessary and that qualified attorneys in San Diego could have handled this case. PCOA Brief at 9–10. Defendant, therefore, argued the time and expenses incurred for travel were unnecessary and should be deducted. In response, Christopher Brancart eliminated an additional 74.6 hours from his time attributable solely to his travel from Northern California to San Diego for this case.

After the deductions set forth above, the resulting total was 866.5 hours equaling fees of $254,799.00. *See* Reed's Reply at 14.

| Biller | Total Hours | Reduction and 5% | Adjusted Hours |
| --- | --- | --- | --- |
| Christopher Brancart (Attorney) | 592.9 | -(9.1 + 29.0 + 74.6 for travel) | 480.2 |

| | | | |
|---|---|---|---|
| Elizabeth Brancart (Attorney) | 213.1 | -(3.8 + 10.1) | 199.2 |
| Katja Thomas (Sr. Paralegal) | 69.6 | -(1.6 + 3.4) | 64.6 |
| Dena Reiner (Paralegal) | 85.4 | -(12.1 + 3.7) | 69.6 |
| David Winbourne (Litigation Support) | 35.7 | -(5.0 + 1.5) | 29.2 |
| Jordan Cohen (Litigation Support) | 30.2 | -(5.2 + 1.3) | 23.7 |
| **Total:** | 1026.9 | -(36.8 + 49.0 + 74.6) | 866.5 |

Defendant also challenged time billed by Elisabeth and Christopher Brancart for the preparation and argument of the post-trial motions. The plaintiff did not prevail on the post-trial motions for injunctive relief. Moreover, the time spent by plaintiff on the motion to substitute the Ralph Act for the Bane Act to correct plaintiff's own pleading error should not be borne by defendant. A review of the time billed by Elisabeth Brancart between January 22, 2007, and February 20, 2007, shows 33.7 hours attributable to the post-trial motion work and 7.7 hours of Christopher Brancart's time attributable to post-trial motion work. This time, 41.4 hours at $350 an hour, is appropriately deducted reducing the fee claim by $14,490 to a total of $240,309.00.

Finally, defendant challenges the overall reasonableness of the hours claimed by Brancart & Brancart contending it is more time than can be reasonably attributed to the representation of Ms. Reed alone on the four causes of action on which she prevailed. Defendant contends the hours claimed by plaintiff's counsel, nearly double the total time spent by defense counsel, are excessive and unreasonable. PCOA Brief at 9. The court concurs that the hours claimed, 825. 1, even after the deductions made by plaintiff's counsel and the court, are excessive given the circumstances of this litigation and the results obtained.

The case started with nine causes of action which were pursued by plaintiffs for 17 months. Ultimately the plaintiffs only proceeded with four claims at trial. While there was undoubtedly an overlap in the discovery of the facts supporting the various claims, there was also discovery, investigation and analysis unique to each. Brancart & Brancart represented four individuals throughout this case with distinct claims for damages arising out of at least two distinguishable accusations asserted against defendant. First, all four plaintiffs claimed damages resulting from the failure of the PCOA to take immediate action to cease the harassment by Mr. McDonald. The children, as well as Ms. Reed, claimed emotional distress resulting from the PCOA's failure to stem Mr. McDonald's harassment. Each minor child's claim had to be individually investigated, verified, was the subject of discovery and witness interviews, and had to be prepared for settlement negotiations and ultimately presented at trial.

Second, plaintiffs alleged damages resulting from actions taken unfairly by the PCOA in retaliation of Ms. Reed's complaints regarding Mr. McDonald. They claimed that Ms. Reed and her family were falsely accused of improper behavior on the premises and violations of homeowner rules, and were harassed by the PCOA after the McDonald incident was resolved, so that the plaintiffs were forced to move. Damages for the wrongful retaliation allegation involved claims of lost or reduced housing benefits resulting from the forced relocation and emotional distress to all the plaintiffs resulting from their diminished lifestyle.

The minors were not prevailing parties, so time incurred by Brancart & Brancart

in the preparation and presentation of their claims is not recoverable by Ms. Reed. The retaliation claim was abandoned after the Pre–Trial Conference but before trial commenced, by all plaintiffs including Ms. Reed, so time incurred to investigate, research, and prepare that claim is not recoverable by Ms. Reed.

Brancart & Brancart only identified and eliminated a total of 36.8 hours from the total 1026.9 incurred in the litigation for time spent on (1) the investigation, discovery and preparation of the claims of the minors, (2) the retaliation action, (3) the punitive damage claim and (4) for time specific to the preparation of the jury instructions and verdict forms,[2] approximately 3.5% of the total time spent on this case. Ms. Brancart asserts that the retaliation claim was just a subset of the sexual harassment claim, and only identified 0.9 hours billed by Christopher Brancart that was specific to the retaliation claim. *See* E.Brancart Decl. at ¶ 24. The allegations regarding wrongful retaliation, however, were different in time and nature and the damages alleged were distinct from the sexual harassment claims. It is unreasonable to represent that a mere 0.9 hours was spent on this claim, including the discovery, analysis and preparation of it, during the entire the two years of this litigation. It is unreasonable to represent that an average of only 12 hours per minor child was spent on the assessment and development of their individual claims, including the collection and review of medical and school records, interviews of potential witnesses to their damage claims, interviews of the children themselves directly related to their damages for both the sexually harassment and the retaliation claims, responding to discovery, prep-

aration for settlement negotiations and preparation for trial.

The court has the discretion to adjust the fee award in consideration of the overall relief obtained in relation to the hours expended on the litigation. *Lytle,* 382 F.3d at 989. An award of fees in the amount of $240,309.00, based on the hours claimed by Brancart & Brancart, even after the deductions set forth above, would be excessive in light of the plaintiff's recovery of $47,000, the denial of injunctive relief, dismissal of the claims of the children during trial, and the abandonment before trial by plaintiff of five of the nine causes of action. This court therefore recommends that the fee award be reduced by approximately one-third, to account for the time spent by counsel in pursuit of abandoned claims and on behalf of non-prevailing parties, and in light of the award plaintiff received on the remaining claims in the litigation, for a total fee award of $161,000.00.

### C. *Costs and Expenses*

A prevailing party may recover as part of the fee award out-of-pocket expenses that attorneys normally charge to fee paying clients. *Dang v. Cross,* 422 F.3d 800, 814 (9th Cir.2005). The requested expenses must be reasonable. *Harris v. Marhoefer,* 24 F.3d 16, 20 (9th Cir.1994).

Plaintiff claims $16,001.51 in costs and expenses and submitted detailed report in support of her claim. *See* E. Brancart Decl., Ex. 16. Although plaintiff's counsel deducted his travel time in recognition of defendant's contention that the engagement of out-of-town counsel was unnecessary, he did not reduce his cost bill to exclude the expenses for his travel. The travel expenses incurred by counsel to

---

2. There is no specific accounting for time spent on behalf of the children or abandoned causes of action in the preparation of the

complaint, other pleadings, pre-trial submissions or settlement documents.

come to San Diego from Pescadero should also be deducted, including airfare, lodging, car rental, airport parking, meals and other travel expenses, a total of $7,615.68. Also, there is no indication by plaintiff that the expenses claimed for document copying/scanning were reduced to account for charges incurred on behalf the minor children's claims or abandoned claims. The total for document copying/scanning was $2,155.38, and the court reduces that claim by one-third ($712.00) to account work done on behalf of the minors and on abandoned claims.

The court recommends a total award for costs and expenses in the amount of $7,673.83.

## V. CONCLUSION AND RECOMMENDATION

Based upon the foregoing discussion, this Court **RECOMMENDS** that Plaintiff Joann Reed, as prevailing party, be awarded $161,000.00 in attorneys' fees and $7,673.83 in costs and expenses for a **total award of $168,673.83.**

This Report and Recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before *September 14, 2007.* The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed and served **no later than 10 days after being served with the Objections.** The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED.**

August 31, 2001.

## REPORT AND RECOMMENDATION REGARDING THE MOTION BY PLAINTIFF FAIR HOUSING COUNCIL OF SAN DIEGO FOR AWARD OF FEES AND COSTS

CATHY ANN BENCIVENGO, United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is Plaintiff Fair Housing Council of San Diego's application for attorneys' fees pursuant to 42 U.S.C. § 3613(c)(2) and California Govt.Code § 12989.2. Plaintiff was represented by James Treglio. For the reasons set forth below, the Court recommends Plaintiff's application be **DENIED.**

## II. BACKGROUND

The Fair Housing Council of San Diego ("the FHCSD") is a non-profit organization. Its mission is to promote fair housing throughout San Diego County. One of its specific goals is to assure equal access to housing and the elimination of unlawful housing discrimination in San Diego.

In July 2004, the FHCSD received a complaint from co-plaintiff Joann Reed, a resident of the Penasquitos Casablanca condominiums that defendant, the Penasquitos Casablanca Owner's Association ("PCOA"), employed an individual who was sexually harassing her at her residence and the PCOA failed to respond to her complaints. The FHCSD investigated and concluded the PCOA engaged in a pattern and practice of sexual harassment against female residents and that the PCOA promulgated and enforced rules and regulations that discriminated against families with children because of their familial status.

The FHCSD filed a complaint with co-plaintiff Reed on January 14, 2005, against the PCOA, alleging a pattern or practice of

discriminatory housing practices based on sex and/or familial status, and seeking compensatory damages and punitive damages for having to investigate and counteract the PCOA's unlawful conduct, and for injunctive relief.

At the time the Pre–Trial Order was entered the FHCSD still alleged that the PCOA discriminated based on both sex and familial status. Before trial commenced however, the FHCSD withdrew its claim that the PCOA discriminated based on familial status and proceeded only on the sex discrimination claim based on co-plaintiff Reed's allegations. The Court dismissed the punitive damages claim before the case went to the jury. The jury found that PCOA violated the Federal and/or State Fair Housing Act. The jury awarded the FHCSD $500 in compensatory damages for its expenses incurred in counter-acting the discrimination. *See* FHCSD Notice of Joinder and Separate Brief Regarding Fees ("FHCSD Brief") at 2 (the jury awarded $500 in damages "most likely for FHCSD's anti-discriminatory advertising to the residents of PCOA").

Plaintiff's post-trial motion for equitable relief in the form of various injunctions was denied. On May 14, 2007, Plaintiff filed its application for an award of attorneys' fees and costs in the amount of $64,809.69. *See* FHCSD Brief, Ex. 3–4. On May 31, 2007, Defendant filed its opposition. On June 15, 2007, Plaintiff filed its reply.

## III. DISCUSSION

The Federal Fair Housing Act provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). The California Fair Employment and Housing Act also provides the court with discretion to award fees. *See* Cal. Govt.Code § 12989.2.

A prevailing plaintiff in a federal civil rights case should recover attorneys' fees unless special circumstances would make an award of fees unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The FHCSD is a prevailing plaintiff. The jury returned a verdict in its favor on the Federal and State Fair Housing Acts. The prevailing party inquiry does not turn on the magnitude of the relief obtained. "The degree of the plaintiff's success does not affect eligibility for a fee award." *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

That notwithstanding, defendant contends that the court should deny this plaintiff fees entirely because its success was so limited. All plaintiff's claims for equitable relief were denied, and the plaintiff's monetary recovery was nominal. *See* PCOA's Brief in Opposition to Plaintiffs Motion for Attorney's Fees ("PCOA Brief"), at 4. Defendant urges that the court in its discretion can award low fees or no fees to a civil rights plaintiff who receives such limited success. *Id.* at 3–4, *citing Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

The FHCSD's success was nominal in relation to the relief it sought. Plaintiff's success in this matter can be characterized as a technical victory. The plaintiff in this case received none of the injunctive relief or punitive damages it sought. The compensatory damage award did not even cover the expenses the FHCSD claimed it incurred in the matter. Plaintiff's witness Mary Scott Knoll testified the FHCSD incurred 80 hours of investigation at $6.25 an hour and prepared and distributed 500 anti-sexual harassment flyers within the Penasquitos Casablanca community at $1.00 per flyer. See FHCSD' Brief at 2–3. The damage award to fully compensate this plaintiff for its expenses was $1,000 at

a minimum, yet the jury only awarded half that amount and the court awarded no equitable relief. Such a result is a technical victory at best in comparison to the relief sought. By contrast in *Fischer*, although the ADA plaintiff did not receive any money, the court found he achieved the equitable relief that was the goal of his claim. The court therefore concluded, contrary to defendant's contention, that his victory was not technical. *Fischer*, 214 F.3d at 1120.

The degree of the plaintiff's overall success does go to the reasonableness of a fee award.[1] "The most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar*, 506 U.S. at 114, 113 S.Ct. 566. "The district court has a great deal of discretion in determining the reasonableness of the fee." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992). With regard to this plaintiff, the recovery does not justify the award of fees. This Court therefore recommends that the FHCSD's fee application be denied.

## IV. CONCLUSION AND RECOMMENDATION

Based upon the foregoing discussion, this Court **RECOMMENDS** that Plaintiff FHCSD's application for fees and costs be **DENIED.**

This Report and Recommendation is submitted to the United States District Judge, assigned to this case, pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before ***September 18, 2007.*** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed and served **no later than 10 days after being served with the Objections.** The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED.**

September 4, 2007.

---

1. The prevailing attorneys bear the burden of establishing entitlement to an award and must document the appropriate hours expended and hourly rates. *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. Applicants should make a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours from a fee request. *Id.* at 434, 103 S.Ct. 1933. Plaintiff's application for fees in an amount more than 100 times greater than its recovery, makes no reductions for time spent on dismissed and unsuccessful claims. Furthermore, it incorporates time spent by Mr. Treglio working for co-plaintiff Reed, such as preparing her for trial. *See* FHCSD Brief at 3. The FHCSD cannot recovery for attorney time or expenses incurred to litigate the co-plaintiff's separate claims. The application is not limited to the work done for FHCSD on the claims upon which it prevailed. Plaintiff's application does not even attempt to meet its burden to establish hours reasonably expended in pursuit of claims upon which it prevailed.